UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                         :

MAGGIE RHEE-KARN, individually and as the  :
parent and natural guardian on behalf of SARAH  :
KARN,                                     :               13 Civ. 6132 (JPO)
                              Plaintiffs,  :
                                       :          OPINION AND ORDER

                  -v-               :

MARVA A. BURNETT, as a state actor referee;  :
EDWINA RICHARDSON-MENDELSON, as a  :
state actor Administrative Judge for the New York:
City Family Court; ROSEMARY RIVIECCIO;  :
STEPHANIE BRANDT; A. GAIL PRUDENTI,  :
as Chief Administrative Judge of the Courts;  :
OFFICE OF COURT ADMINISTRATION; and  :
DOES 1-3,                            :
                               Defendants. :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

      Maggie Rhee-Karn ("Rhee-Karn"), individually and on behalf of her daughter, Sarah

Karn ("Sarah"), brings this action pursuant to 42 U.S.C. § 1983 against the New York State

Office of Court Administration ("OCA") and several individuals involved in a child custody

dispute in New York County Family Court. Plaintiffs claim that Defendants have violated and

continue to violate their constitutional rights under the First and Fourteenth Amendments by

prolonging the proceedings for more than four years and conspiring to deprive Rhee-Karn of

custody of her daughter without due process. Defendants have moved to dismiss pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs have not plausibly alleged that

they lack an adequate opportunity for vindication of their rights in state court or that special

circumstances warrant intervention. Defendants' motions to dismiss are therefore granted.

# I.   Background

## A.   Factual Background

Unless otherwise noted, the following facts are alleged in the Second Amended Complaint (Dkt. No. 33 ("Am. Compl.")), and are assumed true for purposes of the instant motions.

On April 23, 2010, Rhee-Karn initiated an action in the New York County Family Court to gain full custody of her daughter, Sarah.  On November 17, 2010, Sarah's father, Ken Karn ("Ken"), asked the court to divide custody evenly between himself and Rhee-Karn.  The court granted his request.  At the time, Rhee-Karn had primary custody of Sarah.

On August 19, 2011, the referee in the proceedings, Marva A. Burnett, held a hearing on the order.  After receiving testimony from Ken, she decided: "I have not heard enough that makes me think . . . that I have to change this."  (Dkt. No. 33 ("Am. Compl.") ¶ 25.) Immediately thereafter, the attorney for Sarah, Rosemary Rivieccio, stated: "I am concerned at this juncture there is information that Ms. Karn may relocate to yet a third apartment in a very short period of time."  (*Id.* ¶ 26.)  Based upon this statement—and without hearing testimony from Rhee-Karn—Burnett reversed her prior determination and said that "there is enough concern over the history of this case and what I have heard to make me believe that I need to change the access schedule"; "err[ing] on the side of caution," she modified Rhee-Karn's custody to day visits only on alternating weekends and every Wednesday.  (*Id.* ¶ 30.)  Burnett then ordered an investigation by the Administration for Child Services ("ACS") and adjourned the hearing until October.  In September 2011, ACS reported that Sarah preferred living with her mother and that no issues existed between the two.  Notwithstanding this report, Burnett refused to continue the hearing and did not allow Rhee-Karn to testify or cross-examine Ken.

In late 2011, Rhee-Karn appealed Burnett's August 2011 order to the First Department of the New York Supreme Court's Appellate Division. The court dismissed the appeal on March 20, 2012 on the grounds that the order was non-final and thus not appealable as of right, and that neither the Family Court nor the First Department had given Rhee-Karn permission to appeal. *Matter of Rhee-Karn v. Karn*, 2012 N.Y. Slip Op. 02045 (1st Dep't Mar. 20, 2012).

On January 9, 2012, Rhee-Karn moved to consolidate the custody action with her divorce action in New York Supreme Court, arguing that matters would proceed more quickly in that forum. The court denied her motion, finding that she was at fault for the delay in Family Court because she had requested a forensic evaluation in February or March of 2011, which had not been completed until August 2011. The court also expressed concern that her "true motivation in seeking consolidation [was] to change the forum." (Dkt. No. 25, Ex. B.)

Over the course of the next year, Burnett issued several *ex parte* orders further restricting Rhee-Karn's access to Sarah. In December 2012, Plaintiffs initiated an action in the Southern District of New York substantially identical to the instant action. 12–CV–9354 (NRB). They voluntarily dismissed that action on February 5, 2013. (Dkt. No. 25, Ex. C.)

On January 15, 2013, based upon forensic evidence and the testimony of court-appointed psychiatrist Stephanie Brandt, Burnett continued an order limiting Rhee-Karn to supervised visitation. Brandt's report was "incompetent," "deficient," "inconsistent with the facts and the best interests of the child, biased against [Rhee-Karn] and based upon hearsay and fictions." Brandt was also influenced by a preexisting work and personal relationship with Rivieccio and Ken's counsel, Cheryl Solomon. (Am. Compl. ¶ 171.)

On February 14, 2013, Rhee-Karn filed a motion with the First Department seeking leave to appeal the January 2013 order. The court summarily denied the motion on May 28, 2013. (*Id.*, Ex. D.) This order and the March 20, 2012 order are allegedly "suspect and tainted"

because Rivieccio did not disclose that she was a member of the Departmental Advisory Committee for the First Department.  (*Id.* ¶ 72.)

In a letter dated February 18, 2013, Rhee-Karn, proceeding *pro se*, complained about Burnett's actions to Edwina Richardson-Mendelson, Administrative Judge for the New York County Family Court, and Robert Mulroy, Deputy Chief Judge of the Family Court Magistrates. In her letter, she asserted that she would re-file her suit in federal court if they did not address her case.  (*Id.*, Ex. C.)  She did not receive a response.

On May 15, 2013, Rhee-Karn called Richardson-Mendelson's office to ask why she had not received a response to her February letter.  She was told by an agent that a response "would not be appropriate" since Rhee-Karn had threatened to take legal action.  (*Id.* ¶ 104.)  On July 9, 2013, Rhee-Karn, through counsel, wrote another letter to Richardson-Mendelson (as well as Burnett), again complaining of the delay and requesting immediate and consecutive trial dates. On July 11, 2013, she wrote a final letter—apparently without counsel—to Douglas Hoffman, Supervising Judge of the Family Court, requesting that he review her case.[1]  In both instances, she received no response.

Since then, Rivieccio "refuses to move the case to an immediate trial, refuses to agree to trial dates[,] and claims her schedule does not permit dates offered by the court," and Burnett "refuse[s] to supervise and control the case in a timely manner, and refuse[s] to schedule trial dates to expeditiously end this custody case[.]"  (*Id.* ¶¶ 112–13.)  Brandt and Rivieccio have also charged substantial fees and "maliciously inflated those fees knowing . . . Burnett will support excessive fees," totaling more than $45,000.  (*Id.* ¶ 120, Ex. G.)  Burnett has a preexisting arrangement to appoint Rivieccio and Brandt, as is evidenced by their role together in over

---

[1] The Amended Complaint erroneously lists the dates of these letters as June and omits any mention of Hoffman.  (Am. Compl. ¶¶ 45–46.)

twenty-five cases this year, and appointed Rivieccio without first consulting Sarah's parents or inquiring into Rhee-Karn's ability to pay. Rivieccio also does not consult with Sarah or advocate her position, and she repeatedly fails to appear in court.

### B.    Procedural Background

Plaintiffs initiated this action on August 30, 2013. (Dkt. No. 1.) They filed an amended complaint on November 25, 2013, adding a request for preliminary injunctive relief. (Dkt. No. 12.) Defendants are the OCA; Burnett; Richardson-Mendelson; A. Gail Prudenti, the Chief Administrative Judge of the Courts and supervisor of Richardson-Mendelson; Does 1–3, policymaking officials working with OCA, Richardson-Mendelson, and Prudenti (collectively, the "State Defendants"); as well as Rivieccio and Brandt. The individual defendants are sued in their official and personal capacities.

Defendants moved to dismiss on February 14 and 18, 2014. (Dkt. Nos. 23, 26 & 29.) On February 28, the Court held oral argument on the preliminary injunction motion. That same day, before the hearing, Plaintiffs filed their Second Amended Complaint. (Am. Compl.) Defendants have opted to rely upon their initial motions to dismiss. Following several extensions, Plaintiffs submitted their opposition memoranda on April 14. (Dkt. Nos. 50, 51 & 53.) Defendants replied on May 6. (Dkt. Nos. 57, 58 & 59.)

The Second Amended Complaint asserts claims under 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments (Counts I & II), legal malpractice as to Rivieccio (Count III), disgorgement of fees as to Rivieccio and Brandt (Count IV), and "declaratory and injunctive relief" (Count V). Plaintiffs seek a number of declarations regarding the constitutionality of Defendants' practices; an injunction against the continuation of such practices; "an order to bring Plaintiff Sarah before this court to be heard"; compensatory and punitive damages from

Rivieccio and Brandt; interest, attorney's fees, and costs; and such other relief as may be just and proper. Plaintiffs do not seek monetary relief from the State Defendants.

## II.    Discussion

### A.    Legal Standard

On a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility if the well-pleaded factual allegations of the complaint, presumed true, permit the court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hagan v. City of New York*, 13–CV–1108 (JPO), 2014 WL 4058067, *6 (S.D.N.Y. Aug. 15, 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In contrast to a motion to dismiss under Rule 12(b)(1), a Rule 12(b)(6) motion must be resolved by looking only to the complaint; documents that are attached as exhibits to, incorporated by reference, or integral to the complaint; and matters of which judicial notice may be taken. *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

Federal courts ordinarily must abstain from exercising jurisdiction over constitutional claims seeking declaratory or injunctive relief when (i) there is an ongoing state proceeding (ii) involving an important state interest and (iii) the plaintiff has an adequate opportunity for judicial review of her constitutional claims in state court during or after the proceeding. *Christ the King Regional High Sch. v. Culvert*, 815 F.2d 219, 224 (2d Cir. 1987) (citing *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619 (1986) (relying upon *Younger v. Harris*, 401 U.S. 37, 49, 54 (1971))). This doctrine, known as *Younger* abstention, is based upon notions of comity and federalism and recognizes that state courts are presumptively capable of

vindicating federal constitutional rights. *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citations omitted). Where the *Younger* factors are implicated, the court is required to abstain unless the presumption is unwarranted because of "bad faith, harassment or any other unusual circumstance that would call for equitable relief." *Id.* at 198 (quoting *Younger*, 401 U.S. at 54).

      **B.**    **Application**

          **1.**    ***Younger* Factors**

      Plaintiffs do not dispute that the first two *Younger* factors are satisfied in this case. There is an ongoing family court proceeding, and "there can be no doubt that a custody dispute . . . raises important state interests." *Reinhardt v. Com. of Mass. Dep't of Social Servs.*, 715 F. Supp. 1253, 1256 (S.D.N.Y. 1989) (citing *Moore v. Sims*, 442 U.S. 415, 435 (1979)); *see also Awan v. Kramer*, 2012 WL 5426088, *3 (E.D.N.Y. 2012); *People United for Children, Inc. v. City of New York*, 108 F. Supp. 2d 275, 289–90 (S.D.N.Y. 1990). This leaves only the question whether Plaintiffs have an adequate opportunity for judicial review of their claims during or after the Family Court proceedings.

      As an initial matter, Plaintiffs are fully capable of raising their constitutional due process claims in Family Court. *See, e.g.*, *Thomas v. New York City*, 814 F. Supp. 1139, 1149 (E.D.N.Y. 1993). "Clearly, the Family Court . . . is bound by the Federal Constitution. Thus notions of comity and federalism compel the assumption that the Family Court is competent to hear and thoughtfully consider the [plaintiffs'] constitutional challenges." *Reinhardt*, 715 F. Supp. at 1257.

      To the extent that Plaintiffs "argue[] that [they] cannot obtain relief under the same procedures [they] [are] now attacking as unconstitutional," their "response misunderstands the appropriate inquiry." *Kaufman v. Kaye*, 466 F.3d 83, 87 (2d Cir. 2006). This Court "need ask

only 'whether the state's procedural remedies *could* provide the relief sought[,] not whether the state *will* provide the constitutional ruling which the plaintiff[s] seek[]." *Id.* (quoting *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 79 (2d Cir. 2003)). "Without question, the [Family Court] can consider the constitutional questions [Plaintiffs] raise[] and order relief if [it] deems them to have merit." *Id.* Put differently, since Plaintiffs can assert their claims in Family Court, and *Younger* presumes that forum capable of vindicating federal constitutional rights, they have an adequate opportunity for judicial review of their claims. *See, e.g.*, *Glatzer v. Barone*, 394 Fed. App'x 763, 765 (2d Cir. 2010) ("Nothing in the Appellate Division's order suggests that, as a procedural matter, that court was *incapable* of providing the constitutional relief that Glatzer sought[.]") (emphasis added); *Doe v. State of Conn., Dep't of Health Servs.*, 75 F.3d 81, 85 (2d Cir. 1996) ("Doe provides no evidence that the Medical Examining Board has prevented (or will prevent) him *from raising* his federal concerns in the hearing before it.") (emphasis added). Plaintiffs' allegations of bias or undue delay inform not the adequacy of the forum, but whether, under the circumstances, an exception to *Younger*'s presumption should be made.

Plaintiffs also have an adequate opportunity for judicial review of their claims in state court because they are capable of appealing the decisions of the Family Court. *See, e.g.*, *Spargo*, 351 F.3d at 79; *Doe*, 75 F.3d at 85. "[A] necessary concomitant of *Younger* is that a party . . . must exhaust his state appellate remedies before seeking relief in the District Court." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608 (1975). While Plaintiffs contend that Family Court Act § 1112 prohibits appeals of non-final custody and visitation orders, their interpretation is belied by their own allegations and exhibits. Rhee-Karn's appeal of the August 2011 order was dismissed not because § 1112 categorically precludes appeal of such orders, but rather because she failed to first seek leave to appeal from the Family Court or the First Department. Indeed, Rhee-Karn understood as much when she properly sought leave to appeal the January 2013 order. Plaintiffs

were also able to appeal the First Department's denial of their motion seeking leave to appeal to the New York Court of Appeals.  N.Y. CPLR § 5602.  Since Plaintiffs failed to exhaust their appellate remedies, their claims in federal court are presumptively barred by *Younger*.  *See Kaufman*, 466 F.3d at 87–88.

Finally, Plaintiffs could have initiated Article 78 proceedings challenging "whether a determination was made in violation of lawful procedure."  N.Y. CPLR § 7803(3).  An Article 78 petition is the proper vehicle for challenging state actions taken in violation of the Federal Constitution.  *See, e.g.*, *Dorsett-Felicelli, Inc. v. Cnty. of Clinton*, 349 F. Supp. 2d 355, 363 (N.D.N.Y. 2004); *Martinez v. Scoppetta*, 96–CV–7580 (LAK), 1997 WL 316714, *5 (S.D.N.Y. June 10, 1997) ("Moreover, if the Family Court proceedings are being conducted in a manner which violates federal law . . . plaintiffs[] may challenge these determinations under Section 7803(3).").

Plaintiffs argue that they are foreclosed from initiating Article 78 proceedings based upon an order issued in another, unrelated Article 78 proceeding.  On March 6, 2013, Gary Seckendorf, the father in another custody proceeding over which Burnett was presiding, filed an Article 78 petition asking the Supreme Court to compel Burnett to hear motions in his case, including one that had been outstanding for over a year and a half.  (Am. Compl. Ex. A.)  Two days later, Justice Joan B. Lobis issued an order declining to sign the petition because there was "[n]o basis for application to this court at this time" and "[r]ecourse [was] to the Family Court Administrative Judge."  (*Id.*)  Plaintiffs contend that this order forecloses their ability to file their own Article 78 petition.  This argument fails for two reasons.  First, in order to exhaust their remedies in state court, Plaintiffs must actually petition the reviewing court for relief; they cannot simply decline to petition for relief because it is unlikely—based upon an order in a similar case—that relief will be granted.  *See Kaufman*, 466 F.3d at 87.  Second, Justice Lobis

9

did not forever bar Family Court litigants from bringing Article 78 proceedings; rather, she expressly stated that there was no basis for Seckendorf's "application to this court at *this* time" and that he should first appeal to the Family Court Administrative Judge. (Am. Compl., Ex. A. (emphasis added).) A reasonable interpretation of the order is that recourse would be to the Article 78 judge if the Administrative Judge was unwilling or unable to address his claims. *Younger*'s presumption that state courts will uphold federal constitutional rights compels this interpretation. Because Plaintiffs had (and may still have)[2] the option of bringing Article 78 proceedings, they have an adequate opportunity to vindicate their claims in state court. *See Cecos Int'l, Inc. v. Jorling*, 895 F.2d 66, 70–71 (2d Cir. 1990) (availability of Article 78 proceeding means court "cannot assume that New York's procedures are inadequate to provide plaintiff a forum to review its constitutional claims") (citation omitted); *Reinhardt*, 715 F. Supp. at 1256 (holding Article 78 proceeding to challenge family court's *ex parte* interim order suspending visitation is adequate opportunity under *Younger*).

## 2.  Exceptions to *Younger*

Although *Younger* presumptively requires abstention, this Court may nevertheless intervene if Plaintiffs can demonstrate either (i) bad faith or harassment, or (ii) unusual or extraordinary circumstances warranting equitable relief. *Diamond "D,"* 282 F.3d at 198 (citing *Younger*, 401 U.S. at 54). Plaintiffs contend that both exceptions are applicable.

To invoke the former, Plaintiffs must show that the party bringing the state action had "no reasonable expectation of obtaining a favorable outcome." *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994). This exception does not apply where the plaintiff was the party that initiated

---

[2] The Court expresses no opinion as to whether any of Plaintiffs' claims are time-barred under the statute of limitations for bringing an Article 78 petition. The answer to that question does not alter the analysis. *See, e.g.*, *Martinez*, 1996 WL 316714, *5 n.12; *Reinhardt*, 715 F. Supp. at 1258.

the underlying state court proceedings.  *See Glatzer*, 394 Fed. App'x at 765; *Lerner v. Drager*, 10–CV–7928 (RJH), 2011 WL 1682348, *4 (S.D.N.Y. Apr. 18, 2011).  Since Rhee-Karn initiated the custody proceedings, she cannot claim bad faith or harassment.

The unusual or extraordinary circumstances exception recognizes that "[t]here may . . . be extraordinary circumstances in which the necessary irreparable injury [warranting equitable intervention] can be shown even in the absence of the usual prerequisites of bad faith and harassment."  *Younger*, 401 U.S. at 53.  "The very nature of 'extraordinary circumstances,' of course, makes it impossible to anticipate and define every situation that might create a sufficient threat of great, immediate, and irreparable injury as to warrant intervention."  *Kugler v. Helfant*, 421 U.S. 117, 124 (1975).  However, the Second Circuit has identified "two predicates for application of this exception: (1) that there be no state remedy available to meaningfully, timely, and adequately remedy the alleged constitutional violation; *and* (2) that a finding be made that the litigant will suffer 'great and immediate' harm if the federal court does not intervene."  *Diamond "D,"* 282 F.3d at 201 (citing *Kluger*; *Trainor v. Hernandez*, 431 U.S. 434, 441–42 & n.7 (1977)).  Neither predicate is satisfied here.

First, as noted above, Plaintiffs could have initiated (and might still initiate) Article 78 proceedings challenging the Family Court's process.  Absent a showing that they have *actually* sought and been denied such relief, Plaintiffs have not plausibly alleged that there exists no state remedy to meaningfully, timely, and adequately remedy the alleged constitutional violations. *See, e.g.*, *Diamond "D,"* 282 F.3d at 202 (extraordinary circumstances not present where "to the extent that DOL was dragging its feet, Diamond D was free to file a mandamus proceeding in the Appellate Division to compel the DOL to provide expeditious post-deprivation review").  Nor would it be proper under *Younger* for this Court to infer that such relief is unavailable, either based upon Plaintiffs' strained reading of Justice Lobis's order or the possibility that their claims

11

are time-barred.  Assuming that Plaintiffs' rights have been violated, giving New York "'the first opportunity . . . to correct [its] own mistakes' when there is an ongoing state proceeding serves the vital purpose of 'reaffirm[ing] the competence of the state courts,' and acknowledging the dignity of states as co-equal sovereigns in our federal system.'"  *Spargo*, 351 F.3d at 75 (quoting *Diamond "D,"* 282 F.3d at 200).

Second, as the Court noted during oral argument, it is difficult to see how Plaintiffs will suffer irreparable harm—that there will be more time during which they are wrongfully kept apart—if the custody proceedings come to a close and a final order is issued from which Plaintiffs may appeal as of right.  Plaintiffs' counsel acknowledged that hearing dates had been set, but asserted that they are so sporadic that a decision will not be reached in a timely manner. Given the extremely protracted nature of the proceedings, that may well be true.  But Plaintiffs have not plausibly alleged that they will be greatly and immediately harmed if *this* Court does not intervene, since it is unclear whether the state court cannot or will not offer them the relief they seek.

The Court is mindful of the seriousness of Plaintiffs' allegations, particularly given the Appellate Division's findings regarding Burnett and the documented issues involving the New York Family Court system.  *See In re Rodger W., II v. Samantha S.*, 945 N.Y.S.2d 90 (1st Dep't 2012); *Patricia C. v. Bruce L.*, 848 N.Y.S.2d 102 (1st Dep't 2007); *Report to the Chief Judge of the State of New York*, located at www.courts.state.ny/reports/matrimonialcommission.pdf. However, it must also give due consideration to the State of New York and its authority over

family law matters.  Absent circumstances indicating that New York state courts are unwilling or unable to protect Plaintiffs' federal constitutional rights, abstention is mandated.[3]

> **B.**     **State Law Claims Against Rivieccio and Brandt**

The Court declines to exercise supplemental jurisdiction over the state law claims for legal malpractice and disgorgement.  *See, e.g.*, *Betts v. Shearman*, 12–CV–3195 (JPO), 2013 WL 311124, *16 (S.D.N.Y. Jan. 24, 2013) (declining to exercise supplemental jurisdiction over related state law claims after dismissing 42 U.S.C. § 1983 claims) (citing 28 U.S.C. § 1367(c)).

## III.    Conclusion

For the foregoing reasons, Defendants' motions to dismiss are hereby GRANTED and Plaintiffs' request for preliminary injunctive relief is DENIED.

The Clerk of Court is directed to close the motions at docket numbers 23, 26, and 29 and to close this case.

SO ORDERED.

Dated: September 12, 2014
       New York, New York

_____
          J. PAUL OETKEN
     United States District Judge

---

[3] The parties dispute at length whether the Court lacks jurisdiction in the first place because of the domestic relations exception, which "divests the federal courts of power to issue divorce, alimony, and child custody decrees."  *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992).  In light of the Court's *Younger* analysis, it is not necessary to reach this issue.  *See Spargo*, 351 F.3d at 74.  The Court likewise does not reach Defendants' alternative grounds for dismissal.